## 18864

Marguerite BLANFORD, as Executrix of the Estate of Albert J. Mauterer (substituted for Robert J. Thomas, as Committee for the Estate of Albert J. Mauterer), Appellant, v. Albert J. MAU-TERER, a person non compos mentis, and Cecil Bowen of whom Cecil Bowen is Respondent.

(165 S. E. (2d) 633)

*Messrs. McLain, Sherril & Wilkins,* of Columbia, for Appellant,

148

*Messrs. Frank L. Taylor* and *Kermit S. King,* of Columbia, *for Respondent,*

*Messrs. Boyd, Bruton, Knowlton & Tate, and Kirkman Finlay, Jr.,* of Columbia *for Petitioner, Mrs. Marguerite M. Blanford,*

*A. Birge Wise, Esq.,* of Columbia, *for Petitioner, Mrs. Vera J. Mauterer,*

January 28, 1969.

LITTLEJOHN, Justice.

This action was brought by the committee of Albert J. Mauterer to set aside two leases, one dated March 31, 1965, and one dated April 30, 1965, on the ground that Mauterer, the lessor, was mentally incompetent at the time of the execution of the leases, that undue influence was exercised by the defendant, Bowen, the lessee, and that the terms of the leases are grossly unreasonable and unconscionable.

After the case was tried in the court of common pleas Mauterer died, and this court has substituted Marguerite Blanford as executrix of the estate of Albert J. Mauterer as party plaintiff-appellant.

The lessor, Mauterer, owned certain rental properties in and/or near Columbia and operated a parking lot and service station near the entrance to Fort Jackson. In 1958 he suffered a stroke which resulted in substantial physical impairment, but after a period of convalescence he resumed fairly normal activities incident to his business, including the supervision of properties.

In August, 1964, his wife brought an action against him for separate maintenance and support, and as a result Mauterer moved into an apartment located on the parking lot covered by one of the leases in question here. During the same month Mauterer employed Cecil Bowen, the respondent herein (the lessee involved in this dispute) to operate the service station and to assist in the operation of the parking lot.

After Mauterer's principal employee suffered a stroke in January, 1965, Bowen took over management of the service station, the parking lot, and some rental trailers for Mauterer. During the latter part of 1964 and a substantial part of 1965 Mauterer consulted with Mr. Fedor, his attorney in the domestic relation case concerning his wife's suit for legal separation, and participated in the contested litigation.

He also talked with Mr. Fedor about preparing some leases for him, but such were not consummated by Mr. Fedor. In March, 1965, he consulted with David C. Bryan, an attorney of his own choosing, about his support payments to his wife and concerning his properties. He was concerned with the fact that his wife continued to have a dower interest in his property since there was no divorce involved and since only legal separation and support money were involved in the court proceeding.

Apparently soon thereafter Mauterer sought advice from Mr. Bryan about the possibility of defeating his wife's dower rights. By letter dated March 22, 1965, Mr. Bryan suggested to Mauterer the advisability of leasing the properties here in question to Mauterer's sister, Mrs. Blanford, (who lived in Tennessee) at a reduced rental and for a long period in an effort to show reduction of his income for the purpose of minimizing support payments and possibly to forestall a dower claim.

Upon receipt of the letter Mauterer and Bowen went to see Mr. Bryan about drawing a lease with Bowen as lessee; and on March 31, 1965, a lease was executed covering the parking lot tract, which included the filling station and some rental trailers. The terms of the lease were such that Bowen was to pay $4000 per year as rent for a period of thirty years. On this same day Mauterer executed his will drawn by Attorney Bryan, making his sister, Mrs. Blanford, sole beneficiary and executrix.

On April 30, 1965, a second lease was executed by Mauterer and Bowen. This lease covered a garage and photography laboratory and boarding house, and required Bowen to pay $130 per month. The term of the lease was for five years, with three sucessive five year options.

About four months thereafter, in August 1965, Mauterer became dissatisfied with the leases and talked with Bowen about them. He also approached Mr. Bryan, demanding to know why he had "failed to leave a loophole in the lease where it could be broken."

On September 14 and 17, 1965, Mauterer was seen by Dr. Thomas, a psychiatrist, and in October of the same year was seen by Dr. Thompson, a psychiatrist. Both of these doctors saw him again in February, 1966, and on February 16 he was declared mentally incompetent, and a committee was appointed for him. Thereafter this action was commenced March 22, 1966, asking that the leases be invalidated on the grounds hereinafter indicated. The lessee, Bowen, submitted a general denial by way of answer.

The issues were referred to the Master in Equity for Richland County, who took the testimony and submitted his findings of fact and of law and recommended to the circuit judge that the complaint be dismissed. The plaintiff excepted to the master's report and the circuit judge, after a hearing, overruled all exceptions and confirmed the report.

By appeal to this court the plaintiff-appellant contends that the master and the circuit judge erred (1) in failing to find that Mauterer was incompetent at the time of the execution of the leases, (2) in failing to find that Bowen exercised undue influence over Mauterer in inducing him to execute the leases, (3) in failing to find that the rentals and terms of the leases were grossly inadequate and unconscionable, (4) in failing to consider the opinions of medical experts relative to Mauterer's mentality, (5) in finding that all the lay testimony was to the effect that Mauterer was capable of understanding the nature and consequence of his act in executing the leases, and (6) in finding that fifty percent of the net rent received from house trailers was reasonable compensation to Bowen for supervising trailer rentals.

Plaintiff's evidence consisted of the testimony of Kay Mauterer, daughter of the lessor, Jimmy Rose, who worked for him while in high school and for some time thereafter, Thomas Lane, a real estate agent who attended to some of the rental property involved for several years, and two psychiatrists who examined him as indicated above. His daughter testified that after he and her mother separated in

August, 1964, she saw him two or three times a week, that he was forgetful, got mad over little things, and was sometimes moody and irritable. She testified that he bought a car for her in March or April of 1965.

Rose testified that he had known Mauterer for about eight years, working for him from about the time of his stroke in 1958 up until 1962 or 3 or 4. In recent times he saw Mauterer about once a month. He testified that Mauterer's memory was good, but there were some days when he could not remember. He recited some incidents as examples of his bad memory. Some of the deals which he made seemed good and some bad. It is inescapable that this witness did not have much opportunity to observe Mr. Mauterer along about the time the leases were executed.

Thomas Lane, a real estate agent, testified that he had known Mauterer sixteen or seventeen years. He stated that Mauterer was formerly very tight, but was now a big spender. He said that he handled some commercial rentals for Mauterer but Mauterer attended to other properties including the parking lot. It was his opinion that the rentals provided by the leases were not reasonable for the properties involved and that Mauterer could not have understood the nature of and the contents of the instruments involved. He said that after Mauterer had the stroke in 1958 he was moody, forgetful and easy to anger. At the same time he continued to do business with him. He admitted that Mauterer might have been able to understand the leases with a litle help. He justified his continuing doing business with him in his alleged mental condition because of his interest in him.

Dr. Robert M. Thompson, a psychiatrist, testified that he saw Mauterer for one hour in October 1965, and saw him again in February, 1966. Based on these examinations he endeavored to testify that Mauterer was incompetent during the previous March and April. He said that his patient used a hearing aid, walked with a limp and had a weakness in

the legs, using a walking cane. He stated that he seemed oriented, knew who and where he was, and the date, but seemed euphoric and sometimes tearful. The doctor endeavored to answer hypothetical questions which will be referred to hereinafter.

Dr. Romulus B. Thomas, a psychiatrist, saw Mauterer on September 14 and 17, 1965, and in February, 1966. He testified to difficulty of memory, difficulty of reasoning, difficulty of emotional control and emotional competence. Based on hypothetical questions, he too undertook to testify that his patient was unable to comprehend the nature of the leases several months previously.

The evidence of defendant Bowen consisted of his own testimony, that of Attorney Bryan who drew the instruments, Attorney Fedor who represented Mauterer in his domestic relations case, Dr. Joseph E. Freed, a psychiatrist and Edwin Francies Farr, Jr., an insurance agent.

Defendant Bowen testified he was 40 years old and had known Mauterer for 25 years. He went to work for Mauterer in August, 1964, operating the filing station and assisting with the parking lot.

He testified that Mauterer went to Mexico in January of 1965 for three or four weeks, after advertising in the newspaper for a travelling companion. He testified that Mauterer said he was tired of being worried with the properties and took him in his car to Mr. Bryan's office to talk with him about the leases. Bowen had not known Bryan before. Bowen, Mauterer and Bryan worked out the terms of the leases. In the bringing about of two leases and the execution of his will several visits were made to Mr. Bryan's office, and it is Bryan's testimony that in his opinion Mauterer was completely competent and understood everything that took place.

Mr. Fedor gave testimony to the same effect when he told about representing Mr. Mauterer in his domestic prob-

lems case during the last part of 1964 and well up into 1965. As late as August, 1965, Mauterer appeared at a hearing before the special master.

It was the testimony of Edwin Francis Farr, Jr., an insurance agent and tenant of Mauterer, that Mauterer carried on normal business activities until the end of the summer of 1965, and was in his opinion not incompetent.

From the whole of the evidence it cannot be seriously disputed that Mauterer engaged in various business activities after his stroke in 1958 and up until several months subsequent to the execution of the leases and his will. Some of these activities included the purchase of an automobile for his daughter, participation in a lawsuit instituted by his wife without the appointment of a guardian ad litem, the establishment of a trust fund for his daughter and the execution of his will. Mauterer learned in April, 1965, that the bank-trustee for his daughter proposed to sell a parcel of trust property and he intervened to stop the sale, and incident thereto executed a release agreement with the bank in May, 1965. He was obviously keenly aware of his wife's potential dower claim and, understandably since she had enjoined him from coming to the homeplace, desired to defeat her dower claim. Whether his efforts had the desired effect was not a matter before the lower court and is not now before this court.

Dr. Freed testified in effect that it would not be possible for phychiatrists examining this patient in September or October to determine his competence several months before without being furnished a history of what the individual's previous state had been.

Before us we have concurrent findings of fact of the master in equity and of the trial judge. In such case this court will not disturb such findings unless the same are against the clear preponderance of the evidence or without evidentiary support. See West's S. C. Digest Appeal & Error—1022. The lay testimony of Kay Mauterer, Jimmy

Rose and Thomas Lane for the plaintiff, and that of Cecil Bowen, David Bryan, Jr., David Fedor and Edwin Frances Farr, Jr. for the defendant, is in sharp conflict. We agree with the master and the circuit judge that the psychiatric testimony of Drs. Thomas and Thompson, if properly considered at all, was of little value and was entitled to little weight. The competence or incompetence of Mauterer must be determined by his condition at the time of the execution of the leases. It is not sufficient to show that the lessor's mental powers were impaired. *DuBose v. Kell,* 90 S. C. 196, 71 S. E. 371 (1911). In order to void a transaction it must be shown that the lessor did not have sufficient capacity to understand in a reasonable manner the nature and effect of the act he was performing.

The master concluded that the testimony of the two psychiatric experts was subject to the same inherent, fatal vice as the expert testimony in the *DuBose* case. In that case the court concluded that the expert testimony was based largely upon conjecture and was of little value, if any, to the judicial mind. From a reading of the entire master's report, we are not completely sure whether the testimony of Drs. Thomas and Thompson was disregarded or considered and ignored because of its speculative nature, but in either event we think the findings of the master and the circuit judge were correct in view of the entire testimony.

This appellant argues that the master erred in finding that all the lay testimony was to the effect that Mauterer was capable of understanding the nature and consequence of his act in executing the leases. The master did hold that all of the lay testimony was to the effect that Mauterer was capable of understanding the leases but he was obviously referring to those laymen who were with him at the time of the transaction. There was certainly testimony of three laymen who testified to the contrary, but their testimony did not relate to the time of the signing of the leases, which is the time with which we are concerned in this case. Such

lay testimony as was given to the effect that Mauterer was incompetent was general and was not oriented to his capacity on either March 31 or April 30, 1965.

There is conflicting testimony as to the adequacy of the consideration for the execution of the leases. This makes a question for determination by the trier of the facts. Inadequacy of consideration alone is not sufficient to invalidate a transaction, for one who is competent may, if he likes, dispose of property for an inadequate consideration or may for that matter give it away. See *Owens v. Sweat*, 227 S. C. 112, 86 S. E. (2d) 886 (1955). At the same time it is well established that inadequacy of consideration may be sufficient to infer undue influence, but in determining whether or not undue influence has been exerted the court must take into consideration all of the surrounding circumstances and must consider other factors than monetary exchange which may have brought about the transaction.

Without reciting the figures testified to by the various witnesses we think that even assuming that the properties would have warranted substantially greater rentals there are other considerations which caused Mauterer to sign the leases. He had been enjoined by his wife from the homeplace and was under court order to pay her support money. Obviously, as found by the Master, one of his motivations was a desire to minimize the possibility of his wife receiving dower benefits. His daughter (apparently the only child) had already been provided for by the establishment of a trust. His sister lived in Tennessee and was not in a position to manage the properties. Bowen had worked for him since the beginning of the domestic difficulty and they were obviously fond of each other. Another consideration as recited in one of the leases was that Mauterer wished to be freed of management problems such as repairs and maintenance.

This is not a case where one person over-persuades another to take some drastic action quickly. The will and the

two leases grew out of several conferences with an attorney chosen by Mauterer, whose advices he accepted in part and rejected in part.

There is no testimony whatever of any persuasion on the part of Bowen directed to Mauterer. The evidence is certainly susceptible of the inference that the leases made Bowen an advantageous business transaction. When the court considers that there is no showing in the record of unusual persuasion, and when the court considers the overall picture, including the facts enumerated above, we cannot say that the findings of the master and the circuit judge are against the clear preponderance of the evidence or without evidentiary support.

The lower court held that seven house trailers located on the parking lot tract were not covered by the terms of the lease and held that fifty percent of the net rental was a fair compensation to Bowen for the supervision and maintenance of these housing units during the pendency of the action. The parties had agreed that during the litigation Bowen would supervise the rental of these units and pay over fifty percent of the net to the plaintiff.

Appellant excepts to this finding, alleging that such is not fair and that the master simply adopted the figure used by the parties in their agreement which was only a matter of convenience, the order being agreed to without prejudice to anyone's rights. It is further contended that the evidence is insufficient to show what amount is reasonable compensation.

Both litigants had full opportunity to present such evidence as they chose to submit. There was before the master evidence to the effect that the trailers were old and constantly in need of repair and that considerable time and effort was spent in making repairs. Since this is the only evidence on the question and since the consent order is not made a part of the record, we cannot say that the master and the circuit judge erred in proceeding to make the determination based on that evidence which was presented.

The trailers remain on the property and are assets of the Mauterer estate. The case must therefore remain open for a final determination relative to these units and for an accounting.

After the order of the lower court and after the death of Albert J. Mauterer, his widow, Mrs. Vera J. Mauterer, and his sister Mrs. Marguerite M. Blanford (individually), beneficiary under his will, petitioned this court for permission to file briefs for information only. Such requests were granted. It was their further request that "their rights in the real property not be prejudiced beyond what may be required for the decision of the appeal." This court has been mindful of that request and nothing herein contained should be interpreted as restricting their right to pursue any claim which they believe available to them.

We find the exceptions without merit, and the lower court is

Affirmed.

Moss, C. J., and Lewis, J., and Clarence E. Singletary, Acting Associate Justice, concur.

Bussey, J., concurs in result.

Bussey, Justice (concurring in result) :

I agree with the result reached in the opinion of Mr. Justice Littlejohn, but am strongly of the view that the court should refrain from passing upon the adequacy of the considerations for the respective leases involved.

Mrs. Blanford, Mauterer's sister and the sole devisee under his will, is a party to this action only in her capacity as executrix of the estate, she having been substituted as a party in lieu of the committee after the trial below. Mrs. Mauterer, the widow, is not a party at all. These two, individually, sought and obtained permission to file herein *ex parte* briefs, which, in essence, urge this court to restrict its opinion herein to issues necessary to the decision of the

appeal, and to refrain from deciding anything which might prejudice any rights that either of these parties may have against the respondent Bowen. Their request was reasonable and proper and this court, having allowed them to file the briefs, should endeavor to comply with their request. Aside therefrom, it is a well established general rule that an appellate court, with certain exceptions not here present, should, in the exercise of proper judicial restraint, decide only such questions as are necessary for a determination of the appeal. 21 C. J. S., Courts, § 182, p. 292; 5 Am. Jur. (2d) 201, Appeal and Error, Sec. 760; West's South Carolina Digest Appeal and Error—843.

It is totally unnecessary to a decision of this appeal to either affirm or reverse the factual findings of the master and the lower court with respect to the adequacy or inadequacy of the considerations for the two leases. For, assuming, without deciding, that the expressed considerations were grossly inadequate, it is well settled that inadequacy of consideration, alone, is insufficient to invalidate a transaction. One who is competent may, if he likes, dispose of his property for an inadequate consideration, or may, for that matter, give it away. See *Owens v. Sweat, 227* S. C. 112, 86 S. E. (2d) 886, (1955). There being no other factor present which, coupled with inadequacy of consideration, would warrant a rescission, the question of adequacy or inadequacy of consideration becomes immaterial.

To what extent persons not parties to the present appeal would be bound by our opinion is a matter which is not now before us. Assuming, however, that legally Mrs. Mauterer nor Mrs. Blanford, in her individual capacity, will be legally bound by our opinion herein, still an unnecessary appellate approval of the disposition made below on the issue of adequacy could well work a practical, if not a legal, prejudice to these parties. Were it necessary to pass upon the question of adequacy of consideration, I would be inclined to hold that the evidence did not warrant a finding that the monetary or material considerations

160

flowing to Mauterer were adequate, and, to the contrary, warranted, if not compelled, a finding that such were grossly inadequate.